# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 04-2496(E)

Melvin Aponte, Appellant,

v.

R. James Nicholson,
Secretary of Veterans Affairs, Appellee.

On Appellant's Application for Attorney Fees and Expenses

(Argued July 10, 2007                          Decided September 24, 2007   )

*Robert V. Chisholm*, of Providence, Rhode Island, with whom *Elizabeth H. Goldberg*, of Hyattsville, Maryland, was on the pleading, for the appellant.

*Kerry J. Loring*, with whom *Tim S. McClain*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; and *Brian B. Rippel*, Deputy Assistant General Counsel, all of Washington, D.C., were on the pleading, for the appellee.

Before MOORMAN, LANCE, and SCHOELEN, *Judges*.

SCHOELEN, *Judge*, filed the opinion of the Court.  LANCE, *Judge*, filed a dissenting opinion.

SCHOELEN, *Judge*:  Pending before the Court is Melvin Aponte's application for attorney fees and expenses pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d).  He seeks a total of $13,897.74 in attorney fees and expenses for work performed by attorney Elizabeth H. Goldberg.  For the following reasons, we will grant Mr. Aponte's application in the reduced amount of $12,621.74.

## I. BACKGROUND

Mr. Aponte appealed a December 15, 2004, Board of Veterans' Appeals (Board) decision that denied an increased disability rating greater than 20% for the right leg and 10% for the left leg

for compartment syndrome, status post-fasciotomy. On November 28, 2005, the parties filed a joint motion for remand (JMR), in which they agreed that there were errors in the December 2004 Board decision and in a March 2003 VA medical examination. The Court granted the JMR on December 5, 2005.

On December 19, 2005, Mr. Aponte, through counsel, filed an application for attorney fees and expenses under the EAJA. In his application, he seeks reimbursement for (1) 76.7 hours for "Attorney work" performed by attorney Elizabeth H. Goldberg and billed at the rate of $159.52 per hour; (2) 14.6 hours for "Paralegal work" performed by Ms. Goldberg and billed at the rate of $110 per hour; and (3) $56.56 in expenses incurred for photocopying, postage, parking fees, and subway fares. Appellant's Application for Attorney Fees and Expenses (Appl.) at 6, 17. In response to Mr. Aponte's EAJA application, the Secretary concedes that an EAJA award is warranted in this case and contests only the amount that Mr. Aponte seeks, which he contends is "unreasonable" and "excessive on its face." Secretary's Response (Resp.) at 1-2. The Secretary also specifically opposes time billed for research, brief writing, and preparation of the JMR. *Id.* at 3-4. In reply, Mr. Aponte argues that the Secretary does not substantiate his allegations regarding the excessiveness of the time billed. Reply at 5-6.

In January 2007, the Court ordered supplemental briefing to address the effect of *Richlin Security Service Co. v. Chertoff*, 472 F.3d 1370 (Fed. Cir. 2006), *reh'g denied*, 482 F.3d 1358 (Fed. Cir. 2007), *petition for cert. filed*, (U.S. June 25, 2007) (No. 06-1717), on the claim of reimbursement for "paralegal work" in the instant case. In *Richlin*, the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) held that "paralegal services are not recoverable as fees, but are only recoverable as expenses at cost to the attorney." *Id.* at 1381. The Court ordered Mr. Aponte to provide the Court with the cost of paralegal services to his attorney and to present argument why *Richlin* would not be controlling.

In response, Mr. Aponte argues that *Richlin* is not applicable in this case because unlike the paralegal tasks billed in *Richlin,* the tasks billed as "paralegal work" in this case were performed by an attorney, and that he sought the "paralegal rate" only in the exercise of billing judgment. Appellant's Supplemental (Suppl.) Appl. at 3-7. At oral argument, Mr. Aponte further clarified his position by stating that much of the work billed as "paralegal work" could have been provided by a paralegal; however, he argued that much of the work in this case lies in the "gray area" of work

2

that can be performed by either a paralegal or an attorney.  The Secretary responds that, under *Richlin*, paralegal services may only be recovered as an expense to the attorney, regardless of who performs the work.  Secretary's Suppl. Resp. at 3, 9.  The Secretary submits that the Court can calculate the cost of paralegal services to an attorney by resorting to the U.S. Department of Labor, Bureau of Labor Statistics (BLS), the U.S. Office of Personnel Management (OPM), and the National Association of Legal Assistants (NALA).  The Secretary argues that an appropriate rate for recovery of paralegal services would be:  (1) According to OPM, $18.60 to $22.51 per hour in the Washington, D.C., area; (2) according to BLS, $23.12 per hour in the Washington, D.C., area; and (3) according to NALA a national average of $21.33 per hour.  *Id.* at 10-11.  The Secretary also cites a case from the U.S. District Court for the District of Columbia awarding $35 per hour for paralegal services.  *Id.* at 11 (citing *Kooritzky v. Herman*, 6 F. Supp. 2d 13, 20 (D.D.C. 1998)).

After briefing was completed, Mr. Aponte filed a supplemental affidavit in which he provided a sampling of the cost of obtaining paralegal services from three employment agencies in the Washington, D.C., area.  The average sample was $35.17 per hour (with a higher overtime rate).  The Secretary filed an opposition stating that those prices have a profit to the employment agency built into them and, therefore, are not indicative of actual cost.

## II.  ANALYSIS

### A.  Applicable Law

This Court has jurisdiction to award attorney fees pursuant to 28 U.S.C. § 2412(d)(2)(F).  Mr. Aponte's EAJA application was filed within the 30-day EAJA application period set forth in 28 U.S.C. § 2412(d)(1)(B), and the application meets the statutory content requirements because it contains (1) a showing that he is a prevailing party; (2) a showing that he is a party eligible for an award because his net worth does not exceed $2,000,000; (3) an allegation that the Secretary's position was not substantially justified; and (4) an itemized statement of the attorney fees and expenses sought.  *See* 28 U.S.C. § 2412(d)(1)(A), (1)(B), (2)(B); *Scarborough v. Principi*, 541 U.S. 401, 408 (2004).  The Secretary presents no argument with respect to prevailing-party status or whether the Secretary's position was substantially justified.  The Secretary disputes only the reasonableness of the fee.

3

Therefore, the Court must determine what amount constitutes reasonable attorney fees and expenses in this case. *See* 28 U.S.C. § 2412(d)(2)(A); *Perry v. West*, 11 Vet.App. 319, 327 (1998). "The Court has wide discretion in the award of attorney fees under the EAJA." *Chesser v. West*, 11 Vet.App. 497, 501 (1998). "The 'product of reasonable hours times a reasonable rate' normally provides a 'reasonable' attorney's fee." *Blum v. Stenson*, 465 U.S. 886, 897 (1984) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). "The [Court] must determine not just the actual hours expended by counsel, but which of those hours were reasonably expended in the litigation." *Ramos v. Lamm*, 713 F.2d 546, 553 (10th Cir. 1983). In that regard, the Court will consider whether the hours claimed were (1) unreasonable on their face, (2) otherwise contraindicated by the factors itemized in *Hensley*, 461 U.S. at 430 n.3, or *Ussery v. Brown*, 10 Vet.App. 51, 53 (1997), for measuring reasonableness, or (3) persuasively opposed by the Secretary. *See Chesser*, 11 Vet.App. at 501-02. In addition, the Court may reduce the number of hours claimed for "duplicative, unorganized, or otherwise unproductive efforts." *Vidal v. Brown*, 8 Vet.App. 488, 493 (1996). "'Hours that are not properly billed to one's client are not properly billed to one's adversary pursuant to statutory authority.'" *Hensley*, 461 U.S. at 434 (quoting *Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir. 1980) (en banc)). The appellant bears the burden of demonstrating the reasonableness of the fee request. *See Blum*, 465 U.S. at 897.

In *Sandoval v. Brown*, 9 Vet.App. 177 (1996), this Court held that, for the Washington, D.C., area (in which Ms. Goldberg practices), the prevailing market rate for paralegal services may be calculated by referring to what is commonly known as the *Laffey* Matrix, a matrix published by the U.S. Attorney's Office for the District of Columbia setting forth what may be considered a "reasonable" attorney fee rate for attorneys of varying experiences, paralegals, and law clerks. *Id.* at 181 (citing *Covington v. Dist. of Columbia*, 839 F. Supp. 894, 904-05 (D.D.C. 1993)); *see Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354, 371 (D.D.C. 1983). Other courts have also looked to the reasonable market rate for billing paralegal services to determine the appropriate rate for reimbursement under the EAJA. *See, e.g., Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 970 (D.C. Cir. 2004); *Jean v. Nelson*, 863 F.2d 759, 778 (11th Cir. 1988); *Hines v. Sec'y of Health & Human Servs.*, 22 Cl. Ct. 750, 755-56 (1991). *But see Kooritzky*, *supra* (awarding reimbursement for paralegal services as an expense at cost to the attorney rather than as a fee).

In *Richlin*, the Federal Circuit held that the EAJA did not allow recovery at the market rate for paralegal fees. Instead, the Federal Circuit held that the EAJA allows only for reimbursement for paralegal services at the cost to the attorney. *Richlin*, 472 F.3d at 1381. In so holding, the Federal Circuit found that work done by a paralegal could not be considered "attorneys fees" under 28 U.S.C. § 2412(d). *Id.* at 1377. Furthermore, the Federal Circuit distinguished the holding of the U.S. Supreme Court in *Missouri v. Jenkins*, 491 U.S. 274 (1989), that reimbursement at the market rate for paralegal services was appropriate in civil rights cases. *Id.* at 1375-76. The Federal Circuit found that both the language of the EAJA and its legislative history supported the conclusion that paralegal services could only be recovered as an expense at the cost to the attorney, rather than as a fee at the market rate.[1] *Id.* at 1377-81.

B. Whether the $110 Per Hour Rate Is Appropriate

Mr. Aponte seeks reimbursement at a reduced rate of $110 per hour for what he termed in his original EAJA application as "paralegal work" performed by his attorney – the market rate for billing paralegal services in the Washington, D.C., area, as indicated in the *Laffey* Matrix. Appellant's Suppl. Appl. at 18, Exhibit. (Exh.) A. Had those services been provided by a paralegal, the result in this case would be clear – *Richlin* dictates that Mr. Aponte could only recover the actual cost of paralegal services to his attorney. *See* 472 F.3d at 1381. However, in this case, the tasks designated as "paralegal work" were actually performed by an attorney. Thus, the Court must determine the appropriate rate for reimbursement, if any, for these tasks.

At the outset, we reject the Secretary's argument that the time billed in this case at the lower rate is recoverable only as an expense. Simply put, there is no reasoned basis by which the Court can measure an "expense" incurred by an attorney performing paralegal services. Unlike the attorneys in *Richlin*, who clearly incurred some expense by employing paralegals, Ms. Goldberg incurred no "expense" when she herself performed paralegal services.[2] She did not pay a paralegal

---

[1] *Richlin* effectively overruled *Sandoval* insofar as the Court may no longer use the *Laffey* Matrix to determine the appropriate rate of reimbursement for work performed by paralegals.

[2] Our dissenting colleague places weight upon the fact that the Federal Circuit in *Richlin* did not require a detailed showing regarding the actual expense of employing paralegals. It is true that the Board of Contract Appeals had no information regarding the actual cost to the firm of the paralegal services in *Richlin* and that it chose to award what it considered a reasonable cost of such paralegal services to the firm rather than deny entirely recovery for paralegal services. *See Richlin Sec. Servs. Co. v. U.S. Dep't. of Justice*, 2005-2 B.C.A. (CCH) ¶ 33,021 (D.O.T.B.C.A. June 30,

a salary. She did not enter into a contract for paralegal services. She expended nothing but her own time doing work that she believed could also have been done by a paralegal. To be sure, her time has value. The value of her time can be measured by the opportunity cost – that is, the value of the forgone opportunity to perform other work during the 14.6 hours she billed as "paralegal work." An approximate measure of Ms. Goldberg's opportunity cost is her attorney billing rate, presuming she could have billed another client for the 14.6 hours she spent doing this work.[3] However, allowing a prevailing party to recover "expenses" his attorney incurred in providing paralegal services based upon the opportunity cost to the attorney can create the perverse result that the prevailing party is reimbursed at a rate greater than the EAJA's maximum attorney-fee rate because the EAJA attorney-fee limitation does not apply to expenses. That we will not allow.

That does not end the matter, however, because the Secretary's argument is not simply that Mr. Aponte may recover for "paralegal tasks" only as an expense. The Secretary contends that even if we allow recovery for these tasks as a fee, not as expenses, we must reduce the rate of recovery to that which would be recoverable had the work actually been performed by a paralegal. The Secretary draws support from a decision of the U.S. Court of Appeals for the Fifth Circuit, which was later quoted favorably by the U.S. Supreme Court in *Jenkins*.

> It has frequently been recognized in the lower courts that paralegals are capable of carrying out many tasks, under the supervision of an attorney, that might otherwise be performed by a lawyer and billed at a higher rate. Such work might include, for example, factual investigation, including locating and interviewing witnesses; assistance with depositions, interrogatories, and document production; compilation of statistical and financial data; checking legal citations; and drafting correspondence. Much such work lies in a gray area of tasks that might appropriately be performed either by an attorney or a paralegal. To the extent that fee applicants under [the civil rights statute] are not permitted to bill for the work of paralegals at market rates, it would not be surprising to see a greater amount of such work performed by attorneys themselves, thus increasing the overall cost of litigation.

---

2005). However, the issue of what was a reasonable or appropriate expense for paralegal services was not before the Federal Circuit in *Richlin* because the appellant did not raise the issue on appeal. *See Richlin*, 472 F.3d at 1381 ("Richlin does not challenge the Board[ of Contract Appeals'] $35 per hour cost figure.").

[3] Assuming Ms. Goldberg's entire practice is based upon contingent-fee work (and we have no knowledge of the nature of her practice except that she is a solo practitioner), her billing rate would not be a particularly good measure of her opportunity cost because she would collect a fee only in cases where her client prevails.

Of course, purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them. What the court in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717 ([5th Cir.] 1974), said in regard to the work of attorneys is applicable by analogy to paralegals: "It is appropriate to distinguish between legal work, in the strict sense, and investigation, clerical work, compilation of facts and statistics and other work which can often be accomplished by non-lawyers but which a lawyer may do because he has no other help available. Such non-legal work may command a lesser rate. *Its dollar value is not enhanced just because a lawyer does it*."

*Jenkins*, 491 U.S. at 288 n.10 (emphasis added).

The Court is mindful of the Supreme Court's concern, expressed in *Jenkins,* that tasks ordinarily performed by paralegals might migrate to attorneys so that they can be billed at an attorney rate in order to receive increased reimbursement for fees and expenses incurred during litigation. *See id.* The Court is also guided by the Federal Circuit's concern in *Richlin* that the reimbursement of paralegal tasks in the absence of a statutory cap might give a business or law firm the incentive to shift work from attorneys to paralegals in order to increase its potential EAJA award. *See Richlin*, 472 F.3d at 1380-81. The Court shares these concerns and has no intention of endorsing any practice where work is characterized as billed by an individual within an organization merely as an attempt to receive increased EAJA reimbursement. Here, Mr. Aponte's attorney was not employed by a firm or business that has paralegals on staff.

Moreover, to reduce the rate Mr. Aponte may recover for what Ms. Goldberg described as "paralegal work" in the initial application, we would have to make a finding that the work performed was "paralegal work" and that such "paralegal work" can be distinguished from "attorney work." That we will not do. First, we are not convinced by the Secretary's argument that Mr. Aponte conceded in his initial application that the work billed as "paralegal work" can only be billed at a paralegal rate. In Mr. Aponte's reply, his pleading filed in response to *Richlin*, and at oral argument, he has maintained that the label "paralegal work" was not intended to have such significance, but was merely intended to reflect an exercise of billing judgment. We agree with Mr. Aponte that he

7

did not concede in his initial application that the work done in this case can be billed only at a paralegal rate.[4]

More significantly, however, we will not draw an arbitrary distinction between "paralegal work" and "attorney work." There is an abundance of tasks that can be performed by both paralegals or attorneys. However, there is no clear line between paralegal tasks and attorney tasks. *See Jenkins*, 491 U.S. at 288 n.10. Thus, it does not follow that it is unreasonable for an attorney, especially a solo practitioner such as Ms. Goldberg, to bill for work that can be performed by both a paralegal and an attorney. Moreover, given the broad range of tasks that a paralegal is capable of doing and the large number of tasks that might be performed by either a paralegal or an attorney, there is no way for the Court to define that which is purely "paralegal work," and thereby limit "attorney work" to that which can never be performed by a paralegal.

In contrast, the Court has distinguished legal work from nonlegal work and has determined that nonlegal work is not compensable under the EAJA. *See Baldridge v. Nicholson*, 19 Vet.App. 227, 236 (2005) ("Applicants are not permitted to bill for and collect fees for clerical work and the work of general support staff."). Our dissenting colleague relies on *Jenkins* to support his view that an attorney may not recover a fee greater than $35 per hour for "paralegal work." However, the quotation from *Jenkins* he relies upon only addresses the distinction between legal and nonlegal work that the Court already recognizes and does not address the distinction between attorney work and paralegal work. *See Jenkins*, 491 U.S. at 288 n.10 ("'It is appropriate to distinguish between legal work, in the strict sense, and investigation, clerical work, compilation of facts and statistics . . . .'" (quoting *Johnson*, 488 F.2d at 717)).

The tasks at issue in this case lie in the "gray area" of legal tasks recognized in *Jenkins* that might be performed, from time to time, either by a paralegal or by an attorney. Because it is not inappropriate for an attorney to perform this work and because these tasks were, in fact, performed

---

[4] Our dissenting colleague relies on *ZP v. Brown*, 8 Vet.App. 303 (1995) (per curiam order), for the proposition that a concession by a party that a paralegal might have performed certain tasks is binding on a party. Although he characterizes the language from *ZP* as the holding of the Court, the Court in *ZP* decided only the issue of entitlement to an EAJA award and then directed the scheduling of a conference to resolve the matter of the amount of the fees awarded. Because the language relied upon by our colleague in *ZP* is not relevant to the Court's holding, it is obiter dictum and is not binding on the Court. Even if we were bound by *ZP*, it is distinguishable from this case because, in *ZP*, the appellant conceded that the work performed should be compensated at a lesser rate and, in this case, the appellant has made no such concession, but has only sought a lesser rate in the exercise of billing judgment.

by an attorney, Mr. Aponte might be reimbursed for these tasks at the full attorney rate. However, this Court has encouraged attorneys to exercise billing judgment, and, in this case, the exercise of billing judgment led to a claim of a reduced rate for the hours of work at issue. We find the exercise of this billing judgment reasonable in this case. Therefore, Mr. Aponte is entitled to recover attorneys fees under the EAJA for these tasks at the $110 per hour rate he sought.

Although we are mindful of the words of the U.S. Supreme Court that a litigant should not recover a higher fee based upon who does a particular task, *see Jenkins*, 491 U.S. at 288 n.10, we will not create what would necessarily be an arbitrary line between "paralegal work" and "attorney work." Rather, for these tasks that might fall in the gray area, we will anticipate the exercise of reasonable billing judgment where circumstances make it reasonable for the work to be performed by an attorney.

### C. Reasonableness of the Total Fee

Turning to the reasonableness of the total fee sought, we first find that, contrary to the Secretary's suggestion, the amount sought by Mr. Aponte is not unreasonable on its face. In fact, the Secretary provides no justification whatsoever for his assertion that the fee is unreasonable on its face. The Court has repeatedly held that "[u]nsupported allegations of excessive time expended are insufficient to justify a reduction of hours." *Ussery*, 10 Vet.App. at 54; *see Perry*, 11 Vet.App. at 328; *Sandoval*, 9 Vet.App. at 181. The Secretary also suggests that the 23.4 hours billed for "briefing a single issue increased rating claim" and the 5 hours billed for drafting the JMR are unreasonable.[5] Resp. at 4. The Court rejects these challenges for the same reason.

Two specific and related challenges by the Secretary are particularly unpersuasive and merit further discussion. First, the Secretary baldly asserts that "although counsel for Appellant briefed the issues on appeal, her brief was filed with the caveat that negotiations for developing a joint motion for remand were proceeding with the likelihood of success." Resp. at 3. Similarly, in challenging the total fee, the Secretary asserts that "the amount of fees requested is . . . grossly unreasonable in light of the requisite limited litigation." *Id.* at 4-5. Both of these arguments are

---

[5] It is not immediately clear how the Secretary came to the total of 23.4 hours and it is not clear whether all such hours were billed at the rate of $159.52 per hour or whether some of that time was billed at the reduced rate of $110 per hour. The lack of clarity as to which particular entries the Secretary objects to in this case contributes, in part, to the unpersuasiveness of the Secretary's arguments.

presented with the benefit of hindsight. The Court has held that "judgments about whether work is duplicative 'must be made in light of the needs of the litigation as presented to the attorneys at the time the hours of service were performed' and not in terms of an inquisition into exactly which hours were necessary for the precise result later obtained." *Baldridge*, 19 Vet.App. at 241(quoting *Romon v. Korson*, 1996 U.S. Dist. LEXIS 19956, at * 17 (W.D. Mich. Nov. 15, 1996)). It would border on professional malpractice to require an appellant's attorney to spend less time drafting a brief based upon the possibility, however reasonable, of entering into a JMR. Despite the Secretary's contrary representations at oral argument, it is clear from the pleadings that the Secretary argues that reduction of the fee is warranted because Ms. Goldberg reasonably should have believed that the Secretary would enter into a JMR. However, based upon a review of the e-mails submitted with Mr. Aponte's reply, it appears that the persuasiveness of Mr. Aponte's brief, at least in part, prompted counsel for the Secretary to agree to a JMR. Reply Appendix at xii. Thus, the Court will not reduce the fee sought simply because the parties ultimately agreed to a JMR. *See Scarborough v. Nicholson*, 19 Vet.App. 253, 266 (2005) (considering the result obtained in determining whether hours were reasonably expended (citing *Hensley*, 461 U.S. at 434)).

However, in our review of the total fee sought, we find that the reduction of the hourly rate sought for the tasks billed as "paralegal work" does not sufficiently account for the duplicative nature of the work and excessive number of hours for which the appellant seeks reimbursement. Included in the time billed at the reduced rate are two entries totaling 8.1 hours for creating a detailed synopsis of the medical records, an entry for 0.5 hours for ascertaining which private medical records were associated with the claims file in March 2003, and an entry for 0.5 hours for making a list of medical records added to the claims file between February 1999 and March 2003. Appl. at 9, 13. We find that the creation of a synopsis of the medical records and the determination of which records were created at what time duplicates the time spent reviewing the entire record. Accordingly, we will deny reimbursement for the 9.1 hours billed for those tasks. *See Vidal*, *supra*. Additionally, Mr. Aponte seeks reimbursement for three hours spent drafting the table of authorities in his brief. Appl. at 15. We find the time billed for that task to be excessive. Accordingly, we will disallow 2.5 hours of reimbursement sought for drafting the table of authorities, reducing the amount billed for that task to 0.5 hours. *See Chesser*, *supra*. In sum, we will disallow $1,276 of the fees

sought, representing a reduction of 11.6 hours, all of which were billed at the reduced rate of $110 per hour.

Finally, in our review of Mr. Aponte's EAJA application, we observed an error in the calculation of the hours billed. In his application summary, he seeks reimbursement for 14.6 hours of work billed at the reduced rate of $110 per hour. Appl. at 6. However, examination of the itemized billing statement reveals that the actual total of work billed at the reduced rate is 16.1 hours. Appl. at 8-17. When asked about this discrepancy at oral argument, Mr. Aponte's attorney stated that 1.5 hours of work billed at the reduced rate on the itemized billing statement should have been designated as "no charge" based upon billing judgment. We observe a single entry for 1.5 hours billed at the reduced rate for reviewing the record on appeal "to ensure that all counter-designated materials have been included, and that nothing has been added or deleted." Appl. at 13. Based upon the representations made at oral argument, we presume that Ms. Goldberg neglected to designate this entry as "no charge," and we award no fees for this 1.5 hours of work.

## III. CONCLUSION

For the foregoing reasons, Mr. Aponte's EAJA application is GRANTED in the reduced amount of $12,621.74.

LANCE, *Judge*, dissenting: As I believe the decisions of the U.S. Supreme Court and the Federal Circuit are onpoint and controlling, I respectfully dissent. This case presents the question of what hourly rate may be used when shifting expenses under EAJA from an appellant to tax payers for work that could have been performed by a paralegal, but was performed by an attorney. It requires considering the Federal Circuit's recent determination that paralegal services are compensated as an expense rather than a fee under EAJA. *Richlin v. Chertoff*, 472 F.3d 1370 (Fed. Cir. 2006). Here, the appellant submitted an application for attorney fees and expenses under EAJA in which he sought reimbursement for two classes of tasks: "[a]ttorney work" and "[p]aralegal work." In his application, the appellant identified the "[a]ttorney work" as performed by "Elizabeth H. Goldberg" and identified the "[p]aralegal work" as performed by a "1995 law graduate." Fourteen months after filing his application, in supplemental briefing regarding the

applicability of *Richlin*, the appellant identified the "1995 law graduate" for the first time as his attorney, Elizabeth H. Goldberg.

The appellant requested compensation for the "[p]aralegal work" at an hourly rate of $110. This Court has previously held work done by law students, supervised by attorneys, could be compensated under EAJA at the rate set forth in the "*Laffey* Matrix." *Sandoval v. Brown*, 9 Vet.App. 177, 181 (1996). The appellant calculated the requested hourly rate for the "[p]aralegal work" based on the "market rate" listed in the "*Laffey* Matrix." However, the Federal Circuit recently determined "paralegal services are not recoverable as fees, but are only recoverable as expenses." *Richlin*, 472 F.3d at 1381. In doing so, the Federal Circuit abrogated this Court's decision in *Sandoval*, in which the Court found the appellant entitled to attorney fees for work performed by attorney-supervised law students at the prevailing market billing rate for paralegals.

In supplemental briefing, Mr. Aponte argued the requested hourly rate of compensation ($110) was as an "exercise in billing judgment." Appellant's Supplement at 3. "Here, [the a]ppellant identified those tasks performed by his attorney which, in his judgment, could have been performed by either an attorney or a paralegal." *Id*. at 5. At oral argument, the appellant's counsel argued the "[p]aralegal tasks" were those that fell in a "gray area" and could reasonably be performed either by an attorney or by a paralegal under the supervision of an attorney. He did not, nor could he, based on his application, assert that the tasks required the skill and training of an attorney.

In another case, this Court has bound a party to the concession that tasks could be performed by a paralegal for the purpose of assigning the appropriate hourly rate. *ZP v. Brown*, 8 Vet.App. 303, 304 (1995). In ZP, the Court ordered the parties to resolve differences in the amount of attorney fees and expenses in conference with the Court's Central Legal staff keeping in mind that the appellant had conceded the tasks could have been performed by a paralegal;

> [It is] ORDERED that a conference with the Court's Central Legal Staff be scheduled pursuant to Rule 33 of the Court Rules so that the parties may resolve any differences in the amount of the attorney fees and expenses to be awarded. In this connection, the Court notes the concession of the appellant's counsel at oral argument on May 23, 1995, that a substantial number of hours for record review that he billed as attorney time could have been performed by a paralegal and, therefore, should be compensated at the appropriate paralegal rate. *See Action on Smoking and Health v. C.A.B.*, 724 F.2d 211, 220-21 (D.C.Cir.1984) (hours "are not reasonably expended if an attorney duplicates work done earlier by another attorney, if an attorney takes

12

extra time due to inexperience, or if an attorney performs tasks that are normally performed by paralegals, clerical personnel[,] or other non-attorneys.").

*Id*. The characterization by the majority of the *ZP* order as obiter dicta regarding the appellant's concession does not diminish its persuasiveness or provide a reasoned basis to ignore the appellant's concessions throughout the course of proceedings that the tasks could have been performed by a paralegal in this case. In *Richlin*, the Federal Circuit reviewed a Board of Contract Appeals decision finding $35 a reasonable hourly expense for paralegal services. *Richlin*, 472 F.3d at 1374. Notably, the Board of Contract Appeals and Federal Circuit considered no evidence regarding the actual expense to Richlin's counsel of employing a paralegal. *Id*. The Federal Circuit unambiguously held paralegal services are reimbursed at the expense to an attorney. The Court should determine whether the absence of an easily quantifiable amount, because the tasks were performed by the appellant's attorney, will bar recovery for those services.

The nature of the task performed, not the person who performs it, determines the compensation rate. If I replace a light fixture in my own house, it does not mean that my salary as a judge is to be equated with the market rate for an electrician. Rather, it merely means that I personally value the money I have in hand more than the time I would save by hiring someone else to do the work. People everywhere routinely performs tasks themselves even though they can hire someone else to perform the work at an hourly rate less than that they receive for their professional services. Therefore, I would hold that when a quantified expense is not available, an EAJA applicant may be compensated at the reasonable market expense for a paralegal, for work that could have been done by a paralegal.

> It is appropriate to distinguish between legal work, in the strict sense, and investigation, clerical work, compilation of facts and statistics and other work which can often be accomplished by non-lawyers but which a lawyer may do because he has no other help available. Such non-legal work may command a lesser rate. Its dollar value is not enhanced just because a lawyer does it.

*Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989).

The appellant stated at oral argument that, had the "[p]aralegal work" been performed by a paralegal, *Richlin* would control and the expense for the services would be recoverable at $35 per hour for the hours reasonably expended. Hence, the argument that the Court is accepting in this decision is that there are two different rates of compensation available for such work under

13

EAJA–one when attorney performs the work and one when a paralegal performs the same work. Pursuant to *Missouri v. Jenkins*, I would hold the Court may not award $110, rather than $35, per hour for the tasks that can be performed by a paralegal simply because the appellant's attorney performed the work herself rather than delegating it to a paralegal. However, barring all recovery for performance of the paralegal tasks would also contravene the inquiry dictated by *Missouri v. Jenkins* into the work performed and improperly place the focus on who performed the work. Moreover, such a result is not required by *Richlin*. The Federal Circuit in *Richlin* did not require a detailed submission from Richlin's counsel of the actual expense to employ paralegals. Rather, it awarded compensation at a "reasonable cost to the firm." *Richlin*, 472 F.3d at 1374.

I believe the focus by my colleagues on the resources immediately available to the attorney is misplaced. First, the appellant's attorney is not a party to the proceeding; only if she were would the Court be required to tailor it decision to her situation. It is the appellant, not appellant's counsel, who incurred fees and expenses in litigation that are partially reimbursed by an award under EAJA. *See Richlin*, 472 F.3d at 1379. Second, I would not find–as the majority apparently does–that compensating the appellant for "paralegal work" at the paralegal expense rate is undercompensation; particularly where "the purpose of EAJA is not to reimburse all of the costs of the prevailing party but to reimburse costs only when the government's position was not substantially justified and even then to provide only for partial reimbursement." *Id*. The appellant chose the hourly rate of $110 for "paralegal work" based on the *Laffey* Matrix. Application at 5 n. 1. The *Laffey* Matrix "is intended to be used in cases in which a "fee-shifting" statute permits the prevailing party to recover 'reasonable' attorney's fees." Application Exhibit D n.2. My colleagues arrive at the same exact hourly rate as the reasonably reduced rate for attorney work, notwithstanding that "it would be inconsistent with the purpose of EAJA to reimburse paralegal fees at the full hourly rate charged to the client." *Richlin*, 472 F.3d at 1379. I would find compensating for "paralegal work" at $110 per hour excessive, particularly where "the purpose of EAJA was not to make the prevailing party whole." *Id*.

Awarding compensation for tasks that can reasonably be performed by either a paralegal or an attorney at a higher rate, as the majority does here, simply because the tasks were performed by an attorney, or denying compensation because there is no itemized expense for the work, could create an incentive for an appellant to shift work from paralegals to attorneys in order to increase

14

the potential EAJA award.  It could also create an incentive to characterize the work performed in an ambiguous fashion in order to make it appear to be attorney work rather than paralegal work. Therefore, I would award compensation for the performance of the "[p]aralegal work" for a reduced number of hours at the reasonable hourly market expense rate of $35 as *Richlin* requires.